# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| VICTOR H. VALLE and | ) | Case No. 11-02523-TLM |
| DANAE W. VALLE, | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| DOUG STANBROUGH and | ) | |
| PATRICIA STANBROUGH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 11-06051-TLM |
| | ) | |
| VICTOR H. VALLE and | ) | |
| DANAE W. VALLE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION

**INTRODUCTION**

Before the Court are (1) the Objection of Debtors Victor and Danae Valle ("Debtors") to the "Notice of Withdrawal of Proof of Claim" filed by creditors Doug and Patricia Stanbrough, Doc. No. 31 ("Objection"), and (2) Debtors' Motion to Strike the Stanbroughs' jury trial demand in the related adversary

MEMORANDUM OF DECISION - 1

proceeding, Adv. Doc. No. 6 ("Motion to Strike").[1]  Both matters were heard on January 23, 2010, and taken under advisement.  For the reasons set forth below, the Court will overrule Debtors' Objection and grant Debtors' Motion to Strike.

**FACTUAL AND PROCEDURAL BACKGROUND**

The pertinent facts are relatively few and mostly procedural.  On August 17, 2011, Debtors filed a petition for relief under chapter 7 of the Bankruptcy Code.[2]  Upon the filing of Debtors' petition, a "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" was sent to creditors.  Doc. No. 2.  The notice advised creditors that the deadline for filing nondischargeability actions under § 523(a)(2), (4), or (6) was November 14, 2011.  It also instructed creditors not to file proofs of claim because there did not appear to be any property available for distribution by the chapter 7 trustee.  Despite this notice, the Stanbroughs filed a proof of claim on October 5, 2011, in the amount of $650,550.  Claim Nos. 1-1, 1-2.[3]

---

[1] The Court will continue to address these matters in a consolidated fashion in this Memorandum of Decision.  Accordingly, this Decision will be filed in both Debtors' bankruptcy case and the adversary proceeding.  Citations in this Decision to matters of record in Debtors' chapter 7 case, Case No. 11-02523-TLM, will be to "Doc. No. __," while references to matters of record in the related adversary proceeding, Adv. Case No. 11-06051-TLM, will be to "Adv. Doc. No. __."

[2] Unless otherwise indicated, all statutory citations in this Decision are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] The Stanbroughs filed two proofs of claim which appear to be identical.

MEMORANDUM OF DECISION - 2

On October 4, 2011, the Stanbroughs commenced an adversary proceeding against Debtors, alleging their claim was nondischargeable under § 523(a)(2), (4), and (6), and seeking to have Debtors' discharge denied under § 727(a)(2)-(5), and (7). As the basis for their claim against Debtors, the Stanbroughs alleged causes of action under the federal Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. §§ 1961-1968, and the Idaho Racketeering Act, Idaho Code §§ 18-7801 to -7805, in addition to fraud. In their complaint, they characterized this adversary proceeding as a core proceeding under 28 U.S.C. § 157(b)(2)(I), with the exception of the underlying racketeering claims which they claimed to be non-core proceedings that could only be heard by this Court under 28 U.S.C. § 157(c) as matters "related to" Debtors' bankruptcy case. However, the Stanbroughs reserved the right to have all orders entered in the non-core proceedings reviewed *de novo* by the United States District Court. They also demanded a jury trial on the racketeering claims, either in the United States District Court or by way of abstention to allow resolution of the claims in a pending lawsuit against Debtors in Idaho state court.

The Stanbroughs have since amended their complaint twice – first on October 11, 2011, and then again on November 8, 2011 – with no change to the jurisdictional allegations and demand for jury trial. On November 30, 2011, Debtors filed an answer to the Stanbroughs' second amended complaint. Included

MEMORANDUM OF DECISION - 3

therein was Debtors' Motion to Strike the demand for jury trial on the grounds that the Stanbroughs had filed a proof of claim and thus "waived" their right to a jury trial under *Langenkamp v. Culp*, 498 U.S. 42 (1990). Adv. Doc. No. 6 at 19.[4] Debtors further denied that the Stanbroughs' racketeering claims were non-core, "related to" proceedings under 28 U.S.C. § 157(c). *See* Adv. Doc. No. 5 at 3 ¶ 3; *id.* at 2 ¶ 3.

On November 29, 2011, the Stanbroughs filed a "Notice of Withdrawal of Proof of Claim" in Debtors' bankruptcy case. Doc. No. 30 ("Withdrawal Notice"). The following day, when Debtors answered the Stanbroughs' adversary complaint, they also filed their Objection to the Withdrawal Notice. Doc. No. 31. In their reply to Debtors' Objection, the Stanbroughs indicated their intent in withdrawing the proof of claim was to secure a jury trial on their racketeering claims. *See* Doc. No. 34.

---

[4] The amendment of pleadings is addressed by Fed. R. Civ. P. 15, made applicable to adversary proceedings by Fed. R. Bankr. P. 7015. That rule allows a party to

> amend its pleading *once* as a matter of course *within*: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.

(Emphasis added). The Stanbroughs did not seek leave to file their second amended complaint, nor does the record reflect written consent from Debtors. However, the Court treats Debtors' answer to the second amended complaint and lack of objection thereto as being tantamount to written consent to the amendment.

MEMORANDUM OF DECISION - 4

## DISCUSSION AND DISPOSITION

### A. Withdrawal of the Stanbroughs' Proof of Claim

Federal Rule of Bankruptcy Procedure 3006 governs the withdrawal of claims. It provides, in part:

> A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice . . . .

The Stanbroughs claim they are allowed to withdraw their claim as a matter of right pursuant to Rule 3006, notwithstanding commencement of their adversary proceeding. Debtors disagree.

No objection to the Stanbroughs' claim has been filed, nor has a complaint been filed against the Stansbroughs in an adversary proceeding. Further, a plan is not contemplated as this is a liquidation case under chapter 7. However, Debtors argue that by filing their proof of claim the Stanbroughs subjected themselves to the equitable jurisdiction of this Court and in the process lost any right to a jury trial. They further maintain that withdrawal of the proof of claim, if allowed, does not act to reinstate the Stanbroughs' jury trial right. *See*, *e.g.*, *EXDS, Inc. v. RK Elec., Inc. (In re EXDS, Inc.)*, 301 B.R. 436, 440 (Bankr. D. Del. 2003) (finding creditor lost its right to a jury trial because it elected to file a proof of claim and

MEMORANDUM OF DECISION - 5

opining that a creditor cannot, "for strategic reasons, reverse the result it triggered by filing a proof of claim by later withdrawing the claim."). It is on this basis Debtors object to the Stanbroughs' attempt to withdraw the proof of claim. Indeed, counsel for Debtors stated they would have no objection to withdrawal so long as the effect of filing the claim – *i.e.*, loss of the right to a jury trial – endured.

The Stanbroughs contend that withdrawal of a proof of claim as a matter of right under Rule 3006 renders the proof of claim a legal nullity and leaves the parties as though no claim had ever been filed. *See*, *e.g.*, *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995) ("[T]he successful withdrawal of a claim pursuant to Fed. R. Bankr. P. 3006 prior to the trustee's initiation of an adversarial proceeding renders the withdrawn claim a legal nullity and leaves the parties as if the claim had never been brought."). Accordingly, argue the Stanbroughs, they are entitled to a trial by jury on the RICO claims, just as they would be had they never filed a proof of claim.

The Court, however, need not reach the question of what effect withdrawing the proof of claim would have on the Stanbroughs' ability to assert a jury trial right. The Stanbroughs' argument assumes they would be entitled to a jury trial on the RICO portion of their nondischargeability action had no proof of claim been filed. This assumption is flawed. As explained more fully below, a creditor has no right to a jury trial in a nondischargeability proceeding, even on

MEMORANDUM OF DECISION - 6

determinations as to liability and damages on its underlying claims. Because the Stanbroughs would not have been entitled to a jury trial in this nondischargeability proceeding even if no proof of claim had been filed in the first instance, the question of whether withdrawal here nullifies the effects of their filing the proof of claim becomes irrelevant.

**B.    Right to Jury Trial**

**1.    Right to jury trial generally**

Federal Rule of Civil Procedure 38(a), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9015(a), provides that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution – or as provided by a federal statute[5] – is preserved to the parties inviolate."[6] Because the Stanbroughs have not identified any federal statute entitling them to a jury trial, their claim to a jury trial rests on the Seventh Amendment alone.

The Seventh Amendment states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be

---

[5] Congress in its discretion may confer jury trial rights beyond those granted by the United States Constitution. *See N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1502-1503 (7 th Cir. 1991) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 40 n.3 (1989)).

[6] Under 28 U.S.C. § 157(e), if the right to a jury trial applies, a bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties. Here, the Stanbroughs have expressly declined to consent to the bankruptcy court conducting the jury trial to which they claim to be entitled.

MEMORANDUM OF DECISION - 7

preserved . . . ." The term "Suits at common law" has been consistently interpreted as referring to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable remedies are administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). Though the thrust of the Seventh Amendment was to preserve the right to jury trial as it existed in 1791, it "also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Id.* at 41-42.

In determining whether the Seventh Amendment right to jury trial applies, courts use a two-part test articulated by the U.S. Supreme Court in *Granfinanciera*:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

492 U.S. at 42 (internal citations omitted); *see also Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1124 (9th Cir. 1997) (applying the *Granfinanciera* test to determine whether a right to jury trial existed in a nondischargeability proceeding brought under § 523(a)(2)(A)).

MEMORANDUM OF DECISION - 8

The inquiry into whether Congress has permissibly entrusted the resolution of certain disputes to a non-Article III adjudicative body, such as a bankruptcy court, turns on whether a claim asserts a "public right" or a "private right." *Granfinanciera*, 492 U.S. at 42 n.4, 49-64. If a claim that is legal in nature asserts a "public right," then the Seventh Amendment does not entitle the parties to a jury trial; the Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of "private right." *Id.* at 42 n.4.

Under the "public rights" doctrine, the critical question in cases where the Federal Government is not a party is whether "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, has created a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Id.* at 54. If a statutory right is not closely integrated with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court. And if the right is legal in nature, then it carries with it the Seventh Amendment's guarantee of a jury trial. *Id.*

### 2. Right to jury trial in nondischargeability proceedings

In *Hashemi*, 104 F.3d 1122, the Ninth Circuit Court of Appeals had

MEMORANDUM OF DECISION - 9

occasion to consider whether a Seventh Amendment right to jury trial existed in a § 523(a) nondischargeability proceeding. There, the debtor had incurred more than $60,000 in credit card debt during a six-week family vacation to Europe, after which he promptly filed bankruptcy. 104 F.3d at 1124. The credit card company, American Express, sought to have its debt declared nondischargeable under § 523(a)(2)(A), which precludes the discharge of debts obtained through "actual fraud." The bankruptcy court denied the debtor's request for a jury trial, ruled the debt was nondischargeable, and entered a money judgment against the debtor for $69,793.67 plus interest. The debtor appealed, first to the district court and then to the Ninth Circuit. *Id.*

Applying the test articulated in *Granfinanciera*, the Ninth Circuit concluded that actions to determine the nondischargeability of debts were equitable in nature and that litigants in such proceedings did not have a Seventh Amendment right to a jury trial. *Id.* However, it distinguished the bankruptcy court's determination of nondischargeability from the money judgment entered establishing the underlying debt, finding the latter to be a legal, not equitable, determination, potentially placing it within the ambit of the Seventh Amendment. *Id.* at 1124-25. Though noting bankruptcy litigants may nevertheless lose their jury trial rights in legal proceedings "vital to the bankruptcy process of allowance and disallowance of claims," the court questioned whether the creditor's underlying breach of contract

MEMORANDUM OF DECISION - 10

claims against the debtor were sufficiently "vital" to fall within this exception. *Id.* at 1125 (citing *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 354 n.6 (9th Cir. 1996)). Ultimately, the court refrained from deciding the issue because there were no contested issues of fact in the case that would have required a trial, either by judge or jury. *Id.*

Two other Ninth Circuit decisions are also instructive. Though neither addressed the right to a jury trial directly, they did consider a bankruptcy court's authority to enter a final money judgment in a nondischargeability proceeding. Because the "public rights" analysis is the same whether one is considering the constitutionality of a bankruptcy court's authority to enter final judgments or a party's constitutional right to a jury trial, the cases have applicability here. As the Court explained in *Granfinanciera*,

> if a statutory cause of action is legal in nature, the question whether the Seventh Amendment permits Congress to assign its adjudication to a tribunal that does not employ juries as factfinders requires the same answer as the question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal. For if a statutory cause of action . . . is not a "public right" for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking "the essential attributes of the judicial power." And if the action must be tried under the auspices of an Article III court, then the Seventh Amendment affords the parties a right to a jury trial whenever the cause of action is legal in nature. Conversely, if Congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury

MEMORANDUM OF DECISION - 11

> factfinder.[7]

492 U.S. at 53-54; *see also Stern v. Marshall*, 131 S.Ct. 2594, 2609-15 (2011) (examining "public rights" exception in determining that bankruptcy court's exercise of authority to finally resolve a state law counterclaim of the estate, conferred by 28 U.S.C. § 157(b)(2)(C), violated Article III of the Constitution).

The first case is *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015 (9th Cir. 1997). In *Kennedy*, the debtor, though conceding discharge actions were core proceedings, argued that the bankruptcy court lacked jurisdiction to liquidate the underlying state law claim by entering a money judgment on that claim. *Id.* at 1017. The Ninth Circuit disagreed. The court was particularly persuaded by the following analysis of one bankruptcy judge:

> If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action *but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the non-dischargeable debt.*

*Id.* at 1017-18 (emphasis added) (quoting *In re Devitt*, 126 B.R. 212, 215 (Bankr. D. Md. 1991)).

---

[7] Since *Granfinanciera*, 28 U.S.C. § 157, the section governing the authority of bankruptcy courts to hear and decide matters, was amended to add subsection (e). *See supra* note 6.

MEMORANDUM OF DECISION - 12

In *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864 (9th Cir. 2005), the Ninth Circuit reaffirmed its holding in *Kennedy*. In that case, the debtor claimed the bankruptcy court lacked subject matter jurisdiction to enter a new federal money judgment in a nondischargeability proceeding where the underlying debt had been previously liquidated by a state court. *Id.* at 867. Relying on *Kennedy* and recognizing the history of bankruptcy courts' equitable jurisdiction to issue orders in aid of a nondischargeability determination, the Ninth Circuit rejected the debtor's argument. *Id.* at 868-70.

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") has also ruled on the question of whether a creditor has a right to a jury trial in a nondischargeability proceeding. *See Locke v. United States Trustee (In re Locke)*, 205 B.R. 592 (9th Cir. BAP 1996). In *Locke*, the BAP characterized a nondischargeability proceeding as "the determination of an unliquidated and disputed claim, with the addition of the nondischargeability issue" and thus concluded that "[t]here is no meaningful distinction between the determination of liability and damages for the purpose of dischargeability, and the determination of liability and damages for the purpose of allowing an unliquidated and disputed proof of claim." *Id.* at 600. The panel further explained that because "[t]he determination of liability and damages in a nondischargeablility proceeding is a mere adjunct to the determination of discharge issue" it is "integral to the restructuring of the debtor-creditor

MEMORANDUM OF DECISION - 13

relationship." *Id.* (citing *Langenkamp*, 498 U.S. at 44). Based on these conclusions, the court held that the bankruptcy court's equitable jurisdiction permitted resolution of the liability and damages issue without a jury. *Id.*

Here, the claims underlying the Stanbroughs' nondischargeability action, which sound in fraud and are asserted under state and federal RICO statutes, are legal in nature. *See Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 458-59 (1977); *Hashemi*, 104 F.3d at 1124-25. That is to say, the Stanbroughs would be entitled to a jury trial on those claims if brought against Debtors outside the bankruptcy context. This point has not been disputed by the parties. The proper inquiry then is whether determination of liability and damages on the Stanbroughs' underlying RICO claims is so closely integrated into the public regulatory scheme involving "the subject of Bankruptcies throughout the United States," which Congress has authority to enact and regulate under U.S. Const. art. I, § 8, cl. 4, as to be a matter appropriate for adjudication by an Article I bankruptcy court, without the aid of a jury. *See Granfinanciera*, 492 U.S. at 54.

Among the critical features of a bankruptcy proceeding are the equitable distribution of the debtor's property among creditors and the ultimate discharge that gives the debtor a "fresh start" by releasing the debtor from further liability for old debts. *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 363-64 (2006). Each is essential to restructuring debtor-creditor relations through the equitable

MEMORANDUM OF DECISION - 14

process of bankruptcy. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) ("One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start a fresh free from the obligations and responsibilities consequent upon business misfortunes.'") (quoting *Williams v. U.S. Fid. & Guar. Co.*, 236 U.S. 549, 554 (1915)); *see also State of California v. Harleston (In re Harleston)*, 275 B.R. 546 (9th Cir. BAP 2002) ("Discharge *is* no less integral to [the bankruptcy] process than claim adjudication . . . ."). Therefore, entering the discharge and any determinations concerning whether a particular debt is or is not discharged are central to the bankruptcy process and properly within the bankruptcy court's authority to resolve without a jury. *Hashemi*, 104 F.3d at 1124.

Making a determination regarding the dischargeability of a debt involves a two-step process: first, the establishment of the debt itself; and second, a determination as to the nature – dischargeable or nondischargeable – of that debt. *Banks v. Gill Distrib. Ctrs., Inc. (In re Banks)*, 263 F.3d 862, 868 (9th Cir. 2001). At times the debt at issue has previously been liquidated; other times it has not. In the case of an unliquidated debt, the bankruptcy court must necessarily determine liability and damages in order to establish the underlying debt. Adjudication of the underlying claim, which arises under nonbankurptcy law, becomes part and parcel of the dischargeability determination and thus integral to restructuring the debtor-

creditor relationship. As a result, no Seventh Amendment right to a jury trial attends such an adjudication. *See Langenkamp*, 498 U.S. at 44-45; *Granfinanciera*, 492 U.S. at 57-58.

This conclusion finds support in *Kennedy*, *Sasson*, and *Locke*, wherein the Ninth Circuit and BAP acknowledged the significant difficulty, if not impossibility, of divorcing the determination of dischargeability from the function of fixing the amount of nondischargeable debt. *Sasson*, 424 F.3d at 870; *Kennedy*, 108 F.3d at 1018; *Locke*, 205 B.R. at 600. It is likewise consistent with the reasoning of other bankruptcy courts that have addressed the issue. *See Sanders v. Muhs (In re Muhs)*, 2011 WL 3421546, at *2 (Bankr. S.D. Tex. Aug. 2, 2011) (determining that a bankruptcy court may determine the amount of debt excepted from discharge because the determination of the amount is integral to the determination of the exception itself); *see also Farooqi v. Carroll (In re Carroll)*, 2011 WL 6292880, at *9-10 (Bankr. N.D. Tex. Dec. 13, 2011); *Dragisic v. Boricich (In re Boricich)*, __ B.R. __, 2011 WL 5579062, *1-2 (Bankr. N.D. Ill. Nov. 15, 2011).

For these reasons, the Court concludes the Stanbroughs are not entitled to a jury trial under the Seventh Amendment, whether or not their proof of claim is withdrawn. Debtors' Motion to Strike the Stanbroughs' jury trial demand will therefore be granted.

MEMORANDUM OF DECISION - 16

**CONCLUSION**

Debtors' Motion to Strike will be granted and the Stanbroughs' jury trial demand denied. Resolution of the Motion to Strike renders moot Debtors' Objection to withdrawal of the Stanbroughs proof of claim. Because the Court finds no other impediments to withdrawal of the Stanbroughs' proof of claim, *see* Rule 3006, the Objection will be overruled.

Separate orders will be entered consistent with this Decision.

DATED: February 6, 2012

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE